A. R. SELECMAN ET AL., Appellants, v. C. D. MATTHEWS ET AL., Constituting STATE HIGHWAY COMMISSION.—15 S. W. (2d) 788.

Court en Banc, February 11, 1929.

*Irwin & Bushman* and *Randolph & Randolph* for appellants.

*Edgar Shook* for respondents.

RAGLAND, J.—Appellants state their case as follows:

"This action was begun in the Circuit Court of Cole County by plaintiffs, who are resident taxpayers of Andrew County, Missouri, seeking an injunction against the members of the State Highway Commission to restrain them from changing the location of the route on Primary Road No. 27 from Savannah, Missouri, north, to connect with the present pavement thereon near the Andrew-Nodaway County line, and to restrain them from letting contracts for construction work upon the proposed changed route. This road is now known as United States Highway No. 71.

"Shortly before June 22, 1925, the Highway Commission designated as the route for this part of that road an approximately straight line from Savannah to the pavement near the Andrew-Nodaway County line, and had same surveyed and maps and profiles thereof made. That designated route as it will be known in the discussion hereafter is called the 'east route.' The order designating this route was entered of record in the minutes of the meeting of the Highway Commission and it was stated in that order that the reason for so locating the road was because 'the eastern route is more direct and more nearly complies with the intent of the law.' That order stood of record until sometime shortly after the 6th day of April, 1927, during which time the personnel of the Highway Commission changed. Shortly after April 6, 1927, the then commission entered an order on their record changing the location of that portion of said highway from the said 'east route' to what was called therein, and will be hereafter referred to as, the 'Bennett Lane,' or 'West route.'

"In addition to the above the petition also discloses facts in regard to the two routes as follows: The east route follows approximately an air line between Savannah and the north connecting point. The west or Bennett Lane route angles northwest from Savannah for a distance of several miles, then goes straight north for some distance, then angles back to the east again to meet the connection with the pavement near the Andrew-Nodaway County line. The result

of this indirection is that the west route is substantially one mile longer than the east route.

"Then in addition to this lengthening of the primary road for one mile, the proposed west route takes the road farther away from the larger centers of population than would the east route. That is, the east route practically touches on the towns of Rosendale, Bolckow and Barnard. Also a secondary road known as Highway No. 48 coming west from King City through the vicinity of the towns of Whitesville, Rea, Wyeth and Rosendale will have to be extended west to connect with this west route, with the result that the persons coming from the east to Savannah and St. Joseph by that route will be forced to travel approximately four miles farther than would be necessary if the road were located and improved along the said east route.

"The east route is not only more direct as above stated, but better serves centers of population totaling approximately 7000 people, while, by comparison, the west route comes slightly nearer to only about 2000 people. The east route practically touches on the three towns above mentioned, while the west route comes near no towns whatever over its entire length from Savannah to the said connection with the present pavement.

"In addition to all of that, the cost of construction of the two routes is approximately the same, and the cost of maintenance in the future on the east route will be less because of the necessity for less guttering thereon.

"Since the trial court sustained defendants' motion to dissolve the temporary injunction, and since said motion was in effect a demurrer to plaintiffs' petition, the case now comes before this court on the sole question of the sufficiency of plaintiffs' petition.

"In order to determine this question, it is now for this court to say whether or not the Highway Commission violated the law in attempting the change of route under the circumstances detailed above."

The second order of location, referred to in the statement and set out at length in the petition, was as follows:

"It appearing that the Commission had made on April 6, 1927, a personal inspection of the two proposed locations, and that the Chief Engineer advised that the Bennett Lane location could be constructed for approximately $190,000 less than the east or Rosendale location, that the Bennett Lane location could, because of drainage conditions, be subsequently maintained at much less cost than the east location, and that the Bennett Lane location would serve as many people as the east location, it was ordered," etc.

The road in question, as appears from the statement, has been designated a primary road and is now part of United States Highway No. 71. It was first "located" by the State Highway Commission along what is called the "east route;" later it was relocated so as to follow the "west route." Under either location it would conform to the route prescribed for it by the statute. [Sec. 29, State Highway

Act, Laws 1921 (1st Ex. Sess.), p. 145.] Appellants ask that the Commission be enjoined from constructing the road along the "west route," on the ground that such location is not "in the interest of economy and directness of routes," and for that reason does not conform to the intent of the statute. As compared with a road along the "east route," one on the west location will be a mile longer; maintenance cost will be greater; and it will not serve locally the convenience of nearly so many people. These are the specific facts, according to the petition, on which appellants base their contention that the Commission in making the second location violated the statute.

Said Section 29 of the State Highway Act describes in general terms the routes along which the state highways shall be "located;" the power to so "locate" them is conferred upon the State Highway Commission. [See concurring opinion of WHITE, J., in Castilo v. State Highway Commission, 312 Mo. 244, 276.] Such power is circumscribed by no limitations, nor are any rules or regulations prescribed for the manner of its exercise. So far as any of the express terms of the statute are concerned the power is plenary. The language found in the proviso in said Section 29: "in the interest of economy and directness of routes," has reference solely to *changes* in the *routes* of primary roads and not to "locations" along the routes. This is clearly pointed out in Castilo v. State Highway Commission, supra.

But if it be contended that the statute as a whole contains implications which require state highways to be "located" "in the interest of economy and directness of routes," it is sufficient to say that the power to determine the facts in every case is vested exclusively in the State Highway Commission: if the Legislature had intended that the Commission's findings should be subject to judicial review, it doubtlessly would have said so.

An officer to whom public duties are confided by law, is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official functions. Certain powers and duties are confided to those officers, and to them alone, and however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts, after the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is, that the law reposes this discretion in him for that occasion, and not in the courts. The doctrine, therefore, is as applicable to the writ of injunction as it is to the writ of mandamus. [Gaines v. Thompson, 19 U. S. (L. Ed.) pp. 62, 65; Kearney v. Laird, 164 Mo. App. 406, 144 S. W. 904.]

1052

In this case the Commission found that the location of the road on the "west route" was in the interest of economy, with respect to both original construction and subsequent maintenance, and that a road so located would serve as many people as one located on the "east route." Such finding, in the absence of bad faith, fraud or collusion—which are not alleged—is final and conclusive.

To grant an injunction in this case would be to interfere with the ordinary functions of the executive department of the state government: that the courts will not do. [Louisiana v. McAdoo, 234 U. S. 627.]

The judgment of the circuit court is affirmed. All concur.